1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15

| | |
|---|---|
| REGINA STOLL, | CASE NO. 05CV1907 IEG (LSP) |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| THE HARTFORD, | [Doc. No. 19] |
| Defendant. | |

16
17
18

Presently before the Court is The Hartford's motion for summary judgment. For the following reasons, the Court denies this motion.[1]

19

## BACKGROUND

20

**A.    Factual History**

21
22
23
24
25
26

Regina Stoll previously worked for The Hartford as an underwriter. [First Amended Complaint ("FAC") ¶ 6.] Stoll's job required her to keyboard as much as seven or eight hours a day, five days a week. [Stoll Depo., p. 46; Caligiuri Depo. p. 8, & Exhibit 4, p. 1.] On June 4, 2004, Stoll filed a workers' compensation claim for pain and tightness in her hands and inner wrists. [Stoll Depo., Exhibit 1, p. 1.] Stoll was eventually diagnosed with carpal tunnel syndrome, which she had contracted as a result of the frequent keyboarding. [Stoll. Depo., Exhibit 3, p. 1.]

27
28

---

[1] Also presently before the Court are The Hartford's evidentiary objections to the declaration of Regina Stoll. [Doc. No. 20.] In deciding this motion, the Court has taken into account only admissible evidence.

1    Stoll had surgery on her right arm in January of 2005.[2]  [Memorandum of Points and Authorities in

2    Support of Defendant's Motion ("Memo. ISO Motion"), at 3.]

3           From June 4 to June 18, 2004, Stoll attempted to work a part-time schedule.  [Id., p. 40.]

4    Because even the part-time work involved frequent keyboarding, however, Stoll did not get any

5    better.  [Id.]  On June 18, a physician declared Stoll unable to work because of her impairment.

6    [Id., Exhibit 2, p. 2.]

7           Dr. Alexander L. Caligiuri treated Stoll from July 13, 2004 until June 9, 2006.  [Caligiuri

8    Depo., p. 11.]  During that entire period, Dr. Caligiuri considered Stoll to be "temporarily totally

9    disabled."[3]  [Id.]  Dr. Caligiuiri "specifically precluded" Stoll from keyboarding.  [Id., p. 8.]  Stoll

10   understood her doctors' orders to mean she could not keyboard repetitively, but could possibly do

11   other aspects of her job, including the training of new employees.  [Stoll Depo., p. 19.]

12          In October or November of 2004, Stoll called her supervisor, Susan Castenada, to discuss

13   the possibility of going back to work.  [Stoll Depo., pp. 30, 44.]  In these conversations, Casteneda

14   indicated that The Hartford could not use Stoll if she was unable to type.[4]  [Id.]

15          On November 16, 2004, The Hartford mailed a letter to Stoll explaining its policy on

16   unpaid leave and job protection, pursuant to the Family and Medical Leave Act.  [Id., Exhibit 8, p.

17   1.]  The letter explained Stoll had used more than sixteen of the twenty-six weeks of available

18   leave.  [Id.]  If Stoll did not return to work by December 3, 2004, The Hartford could terminate

19   her.  [Id.]

20          On December 6, 2004, The Hartford mailed another letter to Stoll explaining that her

21   twenty-six weeks of FMLA time had expired.  [Id., Exhibit 10, p. 1.]  The letter reiterated that

22   Stoll could be terminated.  [Id.]

23          On March 15, 2005, The Hartford's human resources director, Kathleen Sheridan, mailed a

24   _____

25        [2] In the opinion of her treating physicians, Stoll also needs to have surgery on her left elbow, but the industrial carrier refuses to pay for it.  [Caligiuri Depo., p. 5.]

26        [3] According to Dr. Caligiuri, total disability means "100 percent disabled, incapable of any
27   type of gainful employment[.]"  [Caligiuri Depo., p. 6.]  Indeed, Stoll herself admits that, even today, she could not perform any job that requires her to keyboard with her left hand.  [Stoll Depo., p. 53.]

28        [4] Stoll also discussed her possible return to work with Christine M. Speir, a claims administrator in The Hartford's employee benefits division.  [Stoll Depo., p. 33 & Exhibit 13.]

1  letter to Stoll stating that Stoll would be terminated.  [Id., Exhibit 12, p. 1.]  At this time, Stoll was

2  still undergoing rehabilitative therapy from the surgery on her right arm.  [Id., p. 32.]

3  Sheridan's letter also provided Stoll with a phone number to call if Stoll believed she was

4  eligible "for a reasonable accommodation pursuant to the Americans with Disabilities Act."  [Id,

5  Exhibit 12, p. 1.]  Sheridan also provided the name and phone number of someone whom plaintiff

6  could call regarding employment opportunities "when [plaintiff was] able to return to work, if

7  [plaintiff was] interested in being rehired by The Hartford."  [Id.]  Plaintiff did not call any of the

8  numbers provided in Sheridan's letter because Stoll "was actually surprised that there was no more

9  . . . work towards doing anything about getting [her] in a different position" and, therefore, "had

10  just given up" the prospect of employment at The Hartford after her conversation with Casteneda.

11  [Id., p. 36.]

12  Stoll is unaware of any other job opportunities with The Hartford besides the underwriter

13  position she filled. [Id., p. 41.]

14  From the time period when Stoll left The Hartford until May 2006, Stoll supported herself

15  with workers' compensation payments.  [Id., p. 11.]  Since May 2006, Stoll has supported herself

16  with long-term disability benefits from The Hartford.  [Id., pp. 10-11.]

17  **B.    Procedural History**

18  On May 3, 2005, Stoll received a right-to-sue letter from the California Department of Fair

19  Employment and Housing.  [FAC Exhibit A.]  On August 23, 2005, Stoll filed a complaint in San

20  Diego Superior Court, alleging The Hartford's "failure to make reasonable accommodation for

21  plaintiff's disability," seeking front and back pay, emotional distress damages, and punitive

22  damages. [Compl. ¶ 8 & p. 2.]  Stoll claims The Hartford "has a number of jobs which plaintiff

23  could perform satisfactorily notwithstanding her disability," but did not offer or even discuss these

24  jobs with her.  [Id. ¶ 7.]

25  On August 29, 2005, Stoll filed a first amended complaint requesting attorneys' fees and

26  costs of suit.  [FAC.]  On October 6, 2005, The Hartford filed a notice to remove the action to this

27  Court.  [Doc. No. 1.]  On January 5, 2006, this Court issued an Order denying Stoll's motion to

28  remand.  [Doc. No. 16.]

1    On August 31, 2006, The Hartford moved for summary judgment on Stoll's single cause of

2  action.  [Doc. No. 19.]  On October 2, 2006, Stoll filed her opposition.  [Doc. No. 26.]  On October

3  5, 2006, The Hartford filed its reply.  [Doc. No. 27.]  After hearing oral argument on October 16,

4  2006, the Court took the matter under submission.

5                                              **DISCUSSION**

6  **A.      Summary Judgment Standard**

7           "Under Rule 56(c), summary judgment is proper when the pleadings and discovery, read in

8  the light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to

9  any material fact and that the moving party is entitled to judgment as a matter of law."  Armstrong

10 v. Burlington Northern R. Co., 139 F.3d 1277, 1278 (9th Cir. 1998) (quoting 20th Century Ins. Co.

11 v. Liberty Mut. Ins. Co., 965 F.2d 747, 750 (9th Cir. 1992)); see also Anderson v. Liberty Lobby,

12 Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" when "the evidence presented is such that

13 a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff

14 or the defendant."  Anderson, 477 U.S. at 255.

15          Once the moving party meets the requirement of Rule 56, the burden shifts to the party

16 resisting the motion, who "must set forth specific facts showing that there is a genuine issue for

17 trial."  Anderson, 477 U.S. at 256.  It is not enough for the party opposing a properly supported

18 motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Id.

19 Genuine factual issues must exist that "can be resolved only by a finder of fact because they may

20 reasonably be resolved in favor of either party."  Id. at 250.  To make such a showing, the

21 nonmoving party must go beyond the pleadings to designate specific facts showing that there is a

22 genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

23 **B.      Fair Employment and Housing Act**

24          The California Fair Employment and Housing Act ("FEHA") governs plaintiff's cause of

25 action for failure to make reasonable accommodation.  According to FEHA, "[i]t shall be an

26 unlawful employment practice, unless based on a bona fide occupational qualification . . . : (m)

27 For an employer or other entity covered by this part to fail to make reasonable accommodation for

28 the known physical or mental disability of an applicant or employee."  Cal. Govt. Code §

12940(m) (2005).  A "reasonable accommodation" includes "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."[5]  Id. § 12926(n)(2); Cal. Code Regs. tit. 2, § 7293.9(a)(2) (2006).

To prevail on a motion for summary judgment in a reasonable accommodation case, the employer must prove with undisputed facts "the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith."[6]  Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (Cal. Ct. App. 2000).  Or, the employer must prove "there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation[.]"[7]  Id.

Cases interpreting analogous provisions in federal law (e.g., Americans with Disabilities Act ("ADA"), Rehabilitation Act) are persuasive authority for courts interpreting corresponding FEHA provisions.  Hastings v. Dep't of Corr., 110 Cal. App. 4th 963, 973 n.12 (Cal. Ct. App. 2003).  However, FEHA is not a carbon copy of its federal counterparts.  "Although the [ADA] provides a floor of protection, [FEHA] has always, even prior to passage of the [ADA], afforded additional protections."  Cal. Govt. Code § 12926.1(a); Cripe v. City of San Jose, 261 F.3d 877,

---

[5] FEHA does not "require an accommodation that is demonstrated by the employer . . . to produce undue hardship to its operation." Cal. Govt. Code § 12940(m). An accommodation produces undue hardship if it "requir[es] significant difficulty or expense," in light of a multi-factor test. Id. § 12926(s); Cal. Code. Regs. tit. 2, § 7293.9(b). The Hartford has presented no evidence on undue hardship in this case.

[6] FEHA also provides a separate cause of action for an employer's "fail[ure] to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Govt. Code § 12940(n). Although Stoll does not plead a separate cause of action for failure to engage in the interactive process, the Court considers the law under this separate provision to the extent that such law is relevant to determining whether the Court should grant summary judgment to The Hartford on the cause of action Stoll does raise: failure to make reasonable accommodation.

[7] Jensen provides a third way for the employer to prevail on summary judgment: the employer provides that the employee rejected the reasonable accommodation the employer offered. 85 Cal. App. 4th at 263. The Hartford provides no evidence of a reasonable accommodation that Stoll rejected.

895 (9th Cir. 2001); Bagatti v. Dep't of Rehab., 97 Cal. App. 4th, 344, 360-62 (Cal. Ct. App. 2002) (refusing to apply EEOC regulations limiting the categories of reasonable accommodations available to plaintiffs because the FEHA duty of reasonable accommodation "is broader" than the ADA).

**C.      Whether Plaintiff Must Be "Qualified Individual with a Disability"**

The Hartford insists FEHA does not protect Stoll because she was not an "otherwise qualified disabled individual" able to perform the "essential functions" of her job.[8]  [Memorandum of Points and Authorities in Support of Motion ("Memo. ISO Motion"), at 2.]  Because Stoll was temporarily totally disabled until June 9, 2006, and thus could not work, The Hartford believes it has established there was no vacant position within The Hartford that Stoll was capable of performing.  [Id., at 7-8.]  See Jensen, 85 Cal. App. 4th at 263; Cal. Code Regs. tit. 2, § 7293.8(b) (establishing an employer defense where, "after reasonable accommodation has been made, the . . . employee cannot perform the essential functions of the position in question because of [the] disability").

Under the ADA, but not FEHA, "the term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8) (2006).  The ADA, but not FEHA, further prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee[.]"  Id. § 12112(b)(5)(A).  Therefore, The Hartford believes that a FEHA plaintiff suing for failure to make reasonable accommodation must be a "qualified individual with a disability," as defined by the ADA.

The incorporation of the "qualified individual with a disability" definition into FEHA is disputed among various districts of the California Court of Appeal.  Jensen indeed stated that FEHA plaintiffs must prove their status as "a qualified individual by establishing that [they] can

_____

[8] At oral argument, counsel for The Hartford repeatedly asserted that Stoll was not a "qualified disabled individual."  As a totally disabled individual from the time of her injury until The Hartford terminated her, Stoll "can't work."  Defense counsel emphasized this issue in replying to all the Court's questions, no matter the topic of the question.

perform the essential functions of the position to which reassignment is sought[.]"  85 Cal. App.
4th at 256 (2d Dist.).  However, the Third District "respectfully disagree[d] with Jensen to the
extent it holds that, in order to assert a claim for failure to accommodate, a plaintiff must show that
he or she is 'a qualified individual' within the meaning of 42 U.S.C. § 12111."  Bagatti, 97 Cal.
App. 4th at 361 n.4.  Even more recently, the Third District held that the plaintiff's inability to
perform essential duties with or without accommodation was an insufficient grounds for granting
summary adjudication to the employer in a reasonable accommodation case.  Claudio v. Regents,
134 Cal. App. 4th 224, 244-45 (Cal. Ct. App. 2005).

The California Supreme Court is currently deciding the question whether plaintiffs in
FEHA accommodation cases must show they are "qualified individuals," capable of performing
the essential duties of their job with accommodation.  See Raine v. City of Burbank, 135 Cal. App.
4th 1215, 1227 n.8 (Cal. Ct. App. 2006) (discussing appeal of Green v. State, 132 Cal. App. 4th 97
(2005)).  Without the assistance of that forthcoming decision, this Court follows the Court of
Appeal's more recent reasoning in Bagatti and Claudio.[9]  Therefore, this Court finds The Hartford
cannot prevail merely by showing that Stoll does not satisfy the ADA's definition of "qualified
individual with a disability."

Where the employer asserts a defense based on an employee's inability to perform a job,
"this issue logically arises only after it has been established or assumed that [the employer]

---

[9] The Court is aware of the Central District of California's contrary conclusion in Diaz v. Fed.
Express Corp., 373 F. Supp. 2d 1034 (C.D. Cal. 2005).  In Diaz, the district court followed Jensen
instead of Bagatti and found that the plaintiff in a FEHA accommodation case must be "qualified."
Id. at 1054 & n.16.  The district court relied on the reference to "bona fide occupational qualification"
at the beginning of the statute listing unlawful employment practices.  See Cal. Govt. Code § 12940.
While the correct interpretation of FEHA is properly a matter for the California courts, this
Court does find good arguments to support the more recent conclusion in Bagatti that FEHA
reasonable accommodation plaintiffs need not satisfy the ADA's definition of "qualified individual
with a disability."  As Bagatti itself said, FEHA's reasonable accommodation provision protects "an
applicant or employee," whereas the corresponding ADA provision protects "a job applicant or
employee who is an otherwise qualified individual with a disability[.]"  97 Cal. App. 4th at 360.
Furthermore, in FEHA's prohibition on terminating employees on the basis of disability, the
statute includes a defense when a disabled employee "is unable to perform his or her essential duties
even with reasonable accommodations[.]"  Cal. Govt. Code § 12940(a)(1).  No such defense excuses
the failure to make reasonable accommodation.  This selective application of an "essential duties"
defense to employee termination only is particularly significant in contrast to the undue hardship
defense, which applies both to employee termination and failure to make reasonable accommodation.
Id. § 12940(m).

1    violated the FEHA or breached its duty of reasonable accommodation[.]"  Prilliman v. United Air

2    Lines, Inc., 53 Cal. App. 4th at 962 n.6.  If the employer breached its duty of reasonable

3    accommodation, the employee's inability to perform a position even with accommodation

4    nonetheless proves "any violation of the FEHA would not have caused [the employee] any

5    damage."  Id.  Therefore, the Court will return to the issue of Stoll's total disability once the Court

6    has completed its analysis of whether The Hartford fulfilled its obligations under FEHA.

7    **D.**      **Informal, Interactive Process**

8        1.      Legal Standard

9       The employee generally bears the burden of initiating the informal, interactive process.

10   Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir. 2001).  The employee must

11   communicate, "in a manner that would be understood by a reasonable employer, that the employee

12   has a disability that requires some sort of accommodation in order for the employee to be able to

13   perform [her] work duties."[10]  Norris v. Allied-Sysco Food Services, Inc., 948 F. Supp. 1418, 1437

14   (N.D. Cal. 1996), aff'd sub nom. Norris v. Sysco Corp., 191 F.3d 1043 (9th Cir. 1999).  However,

15   the employee does not bear the burden of initiating the interactive process where the employer is

16   aware of or recognizes the employee's need for accommodation, or if the need for accommodation

17   is "obvious."  Humphrey v. Mem'l Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001)

18   (awareness); Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000), rev'd on other grounds

19   sub nom. US Airways, Inc. v. Barnett, 535 U.S. 391 (2002) (recognition); Norris, 948 F. Supp. at

20   1436 (obviousness).

21       The informal, interactive process "should identify the precise limitations resulting from the

22   disability and potential reasonable accommodations that could overcome those limitations."  29

23   C.F.R. § 1630.2(o)(3).  Both sides "must participate in good faith, undertake reasonable efforts to

24   communicate [their] concerns, and make available to the other information which is available, or

25   more accessible, to one party."  Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 62 n.22

26   (2006).  The purpose of the process is "to determine the extent of the individual's limitations,

27

28
           [10] The employee does not have to use the magic words "reasonable accommodation" when communicating with the employer.  Norris, 948 F. Supp. at 1437; Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 62 n.22 (Cal. Ct. App. 2006).

1    before an individual may be deemed unable to work" and perhaps terminated.  Id. at 61.

2         When the process breaks down, liability is assigned to the party responsible for the

3    breakdown, based on the surrounding objective circumstances.  Id. at 62 n.22; Jensen, 85 Cal.

4    App. 4th at 261.   The employer is responsible for the breakdown when the employer rejects the

5    employee's proposed accommodation and provides no alternative accommodations of its own.

6    Humphrey, 239 F.3d at 1138; Barnett, 228 F.3d at 1117.

7         Similarly, an employer's human resources personnel must do more than provide the

8    employee with minimal "informal assistance"; for example, they must help the employee identify

9    vacancies suitable for her qualifications and limitations, rather than expecting her to evaluate the

10   employer's job listings independently.  Jensen, 85 Cal. App. 4th at 265.  The Jensen court denied

11   the employer's motion for summary judgment even though certain facts suggested the employee

12   had not been fully cooperative (e.g., by refusing to talk to departmental managers about her skills

13   and qualifications, and by adding her own "preferences" to doctors' lists of medical restrictions).

14   Id. at 266.

15        Finally, the court of appeal reversed a directed verdict in favor of the employer where the

16   EEO Manager had written a letter to plaintiff, stating the job description could not accommodate

17   some of plaintiff's physical limitations, and inviting further communication if the employee

18   became aware of a reasonable accommodation that would enable the employee to perform his

19   job.[11]  Gelfo, 140 Cal. App. 4th at 43.

20        2.    Analysis

21        Applying the case law, The Hartford cannot prove by undisputed facts that the informal,

22   interactive process broke down because Stoll failed to engage in good-faith discussions. The facts

23   show that Stoll initiated the process when she called Casteneda regarding a desire to come back to

24   work.  In this conversation, Stoll communicated a disability (i.e., an inability to type) which

25   required accommodation.  At this point, The Hartford became aware of Stoll's need for

26

27        [11] Gelco's reversal of the trial court was predicated on a separate legal error regarding the
     scope of employees owed a duty under FEHA. Defense counsel did argue in the alternative that the
28   employer has discharged its duties in the informal, interactive process, but the appellate court found
     "conflicting" evidence and credited the jury's findings.  140 Cal. App. 4th at 62 n.23.

accommodation.  The need for accommodation was also obvious because Stoll's disability kept her from performing her current job as an underwriter.

The party responsible for the breakdown of the process is a genuine issue of material fact. The evidence submitted for this motion suggests the process broke down because The Hartford refused to participate in good faith.  Stoll contacted The Hartford to propose the accommodation of no typing at her job.  The Hartford rejected this accommodation.  However, The Hartford did not propose any accommodations of its own.  Instead, in March 2005, some four months after Stoll's conversations with Casteneda, Sheridan finally invited Stoll to call if Stoll believed she was eligible for a reasonable accommodation or if Stoll wanted to discuss available employment opportunities.  In the same letter, Sheridan informed Stoll of her pending termination.  The Hartford submits no evidence that, anytime during the intervening period, its agents contacted Stoll with the specific purpose of discussing reasonable accommodations or other available positions.[12]

The Hartford claims Stoll is responsible for the breakdown in the informal, interactive process because Stoll "gave up."  A more careful review of Stoll's deposition indicates that she was surprised at The Hartford's lack of effort to find an alternative position for her.  [Stoll Depo., p. 36.]  As plaintiff's counsel explained at oral argument, The Hartford was not "stepping up to bat in a timely manner."  Stoll's surprise is appropriate, because the law affirmatively obligated The Hartford to contact Stoll once she had initiated the process by informing The Hartford of her disability and The Hartford had rejected the accommodations Stoll proposed.

**E.      Reasonable Accommodation**

The California Court of Appeal has held that, where a genuine issue of material fact exists as to which party is responsible for the process' breakdown, the employer cannot prevail on summary judgment by showing that no alternative jobs were available, because, if the employer had properly engaged in the process, the employer might have found alternative job(s) for the

---

[12] At oral argument, defense counsel suggested that The Hartford did not want to "hound" Stoll by having its human resources personnel call her to discuss accommodations and other available jobs. The reality is that the law did require Hartford not only to contact Stoll affirmatively to discuss accommodations, but also to propose its own accommodations for Stoll's consideration.

employee.  <u>Claudio</u>, 134 Cal. App. 4th at 245, 248.  Interpreting the comparable ADA provision, the Ninth Circuit held, where the employer "did not engage in any such process, summary judgment is available only if a reasonable finder of fact *must* conclude that 'there would in any event have been no reasonable accommodation available.'"  <u>Dark v. Curry County</u>, 451 F.3d at 1088 (9th Cir. 2006) (quoting <u>Morton v. United Parcel Serv., Inc.</u>, 272 F.3d 1249, 1256 (9th Cir. 2001)).

An accommodation is reasonable if it "could plausibly have enabled [the employee] adequately to perform her job."  <u>Humphrey</u>, 239 F.3d at 1136.  Here, the Court considers the accommodation actually provided by defendant (i.e., the leave of absence), the accommodation plaintiff proposed during this litigation (i.e., the creation of a temporary underwriter position devoted exclusively to training and coaching), and the accommodation most frequently discussed in the case law (i.e., reassignment to another position within the company).

    1.    <u>Leave of Absence</u>

        a.    *Legal Standard*

A finite leave of absence is a reasonable accommodation under FEHA, "provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."  <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal. App. 4th 215, 226 (Cal. Ct. App. 1999).  In <u>Hanson</u>, the employer reasonably accommodated the employee by granting sixteen months of leave, seven more than the employee was entitled to receive under the applicable collective bargaining agreement.  <u>Id.</u> at 226-27.  Even though the employee had not fully recuperated from his on-the-job injury by the end of his leave, the ongoing restrictions "d[id] not render the leave accommodation itself unreasonable."  <u>Id.</u> at 227.  The court further noted that the employer also reasonably accommodated the employee by evaluating the employee's medical restrictions and offering the only available position within the company for which the employee qualified.  <u>Id.</u>

    Similarly, in another FEHA case, the Ninth Circuit found that the employer reasonably accommodated the employee by allowing the employee to perform limited job functions for two months before surgery at the employee's former salary; offering the employee the only vacant position in the company for which the employee qualified; and, after the employee rejected this

1  offer, granting the employee a full year of leave to recover from surgery.  Watkins v. Ameripride

2  Services, 375 F.3d 821, 828-29 (9th Cir. 2004).

3       While unpaid leave is a reasonable accommodation under the ADA, the employer does not

4  have to grant a lengthy, indefinite period of leave if the employer does not know when the

5  employee will be able to return to work.  Norris, 948 F. Supp. at 1438.  The district court did opine

6  that a lengthy, indefinite period of leave (even up to one year) could be a reasonable

7  accommodation for a large employer with high employee turnover "if the leave would enable an

8  easily replaceable employee to eventually perform the essential functions of the employee's

9  position."  Id. at 1438-39.

10      Even where the employer believes it has reasonably accommodated the employee by

11  offering a period of disability leave, the employer is not exempt from investigating other

12  accommodations (including other job vacancies), although the employee has not specifically

13  requested those alternative accommodations.  Prillman, 53 Cal. App. 4th at 954.

14           b.     Analysis

15      The Hartford asserts that it reasonably accommodated Stoll by offering her twelve weeks

16  of medical leave, in addition to the twenty-six weeks required by the Family and Medical Leave

17  Act (FMLA).  [Memo. ISO Motion, at 8.]  Applying the law to these facts, the Court finds this

18  accommodation is not independently sufficient to warrant a grant of summary judgment in The

19  Hartford's favor.  First, unlike the accommodations found reasonable in Hanson and Watkins, The

20  Hartford did not couple this leave of absence with any other reasonable accommodations.

21  Specifically, The Hartford did not offer Stoll another vacant job for which she was qualified.

22  Second, the leave was not structured in such a way as to make it "likely that at the end of the

23  leave, [Stoll] would be able to perform . . . her duties."  See Hanson, 74 Cal. App. 4th at 226.

24  Instead, Stoll's medical leave ended when she was still in rehabilitative therapy from her arm

25  surgery and could not work at all.  Third, the Court notes that Stoll received less than three-fourths

26  of a year of leave, while the reasonable leaves of absence in Hanson and Watkins lasted a year or

27  more.  Finally, by granting Stoll a leave of absence, The Hartford did not become exempt from its

28  obligation to search for other jobs that Stoll could perform.  In light of Jensen's instruction that the

1  employer ought not prevail on summary judgment unless the employer shows there were no vacant

2  positions which the disabled employee could perform, the Court finds that The Hartford did not

3  satisfy its duty to reasonably accommodate Stoll by merely offering her an extended leave of

4  absence.

5      2.      Temporary Training-Coaching Position

6          a.      *Legal standard*

7          Under FEHA, "[t]he employer is not obligated to choose the best accommodation or the

8  accommodation the employee seeks." Hanson, 74 Cal. App. 4th at 228.  Under the comparable

9  ADA provision, the employer is also not required "to reallocate essential functions to other

10  employees." Dark, 451 F.3d at 1089.

11          The law specifically and emphatically does not require the employer to create a new

12  position for an employee, Watkins, 375 F.3d at 828, or a temporary light-duty assignment, Raine,

13  135 Cal. App. 4th at 1227, where no such position existed previously.  In Raine, where a patrol

14  officer had been "temporarily" assigned to a front-desk position for six years, the court held that

15  the police department was neither obligated to restructure the front-desk position as a civilian

16  position with an officer's salary and benefits, nor had it been originally required to put injured

17  officers in temporary front-desk positions at their previous level of salary and benefits.  Id. at

18  1218, 1226-27.

19          b.      *Analysis*

20          In opposing the motion for summary judgment, Stoll asserts The Hartford should have

21  assigned to her all the training and coaching duties of an underwriter, allowing Stoll to work full-

22  time without creating higher costs or a need for additional personnel.  [See Opp., at 2; Stoll Decla.

23  in Opp. to Motion, at 2.]   The Court finds that this proposed accommodation fails, as a matter of

24  law.  Despite any other obligations to accommodate Stoll reasonably, The Hartford was not

25  required to create the new position of a never-typing, training-and-coaching-only underwriter.

26  While Stoll insists that such an arrangement would be a temporary fix as she resolved her medical

27  limitations, Raine makes clear that employers are not required to create even temporary light-duty

28  positions to accommodate disabled employees.  135 Cal. App. 4th at 1226-27.

1   //

2       3.      Reassignment

3           a.      Legal Standard

4       Although the law protects The Hartford from creating the new job Stoll requested, it

5   simultaneously imposes a duty on The Hartford to look for other existing, vacant jobs which Stoll

6   would have been qualified to perform.  Under FEHA, if a disabled employee cannot be reasonably

7   accommodated in her current job, the employer must reassign this employee unless "there is no

8   vacant position for which the employee is qualified."  Spitzer v. The Good Guys, Inc., 80 Cal.

9   App. 4th 1376, 1389 (Cal. Ct. App. 2000).  More broadly, whenever the employer knows of an

10  employee's disability, the employer "has an affirmative duty to make known to the employee other

11  suitable job opportunities with the employer and to determine whether the employee is interested

12  in, and qualified for, those positions[.]"  Prilliman, 53 Cal. App. 4th at 950-51.  To terminate an

13  employee without meaningfully exploring other options offends "[t]he hallmark of FEHA [which]

14  is the flexibility it requires of employers to work with its [sic] disabled employees to accommodate

15  their needs."  Sargent v. Litton Sys., Inc., 841 F. Supp. 956, 962 (N.D. Cal. 1994).

16      Therefore, to prevail on summary judgment, the employer must "definitively establish that

17  there were no positions within its organization which met [the employee's] qualifications and

18  restrictions."[13]  Jensen, 85 Cal. App. 4th at 68.  The employee can never bear the entire burden of

19  identifying an alternative position because the employer's "superior knowledge of the workplace"

20  _____

21          [13] On summary judgment, courts hold employers to especially rigorous standards for showing
    the absence of suitable alternative positions for disabled employees.  In Jensen itself, evidence that
22  the employee lacked the skills and qualifications of the positions for which she applied was
    insufficient because it "beg[ged] the question" of whether the employer had other vacancies the
23  employee could have filled.  85 Cal. App. 4th at 264.  In another California case, where the evidence
    suggested the existence of vacancies the employee was qualified to fill but was never told about, the
24  employer could avoid liability only if it showed that those vacancies were filled by equally or better-
    qualified candidates.  Spitzer, 80 Cal. App. 4th at 1390.  A federal district court denied an employer's
25  motion for summary judgment where the employer submitted declarations of managerial personnel
    that the company had no vacancies which the employee could have filled, given his medical
26  restrictions.  Smith v. Sears, Roebuck & Co., 207 F. Supp. 2d 1031, 1035-36 (N.D. Cal. 2002).  The
    declarations were flawed because they did not consider whether there was a vacancy the disabled
27  employee could have filled with accommodation.  Id.  And, in the ADA context, the Ninth Circuit
    recently held, "in considering reassignment as a reasonable accommodation, an employer must
28  consider not only those contemporaneously available positions but also those that will become
    available within a reasonable period [after the employee's termination]."  Dark, 451 F.3d at 1089-90.

1    makes the employer better able to canvass the spectrum of available positions.  Barnett, 228 F.3d

2    at 1113. In short, "the task of proving . . . no reasonable accommodation was available [] rests with

3    an offending employer throughout the litigation, and . . . it is not likely that an employer will be

4    able to establish on summary judgment the absence of a disputed fact as to that question."

5    Morton, 272 F.3d at 1256 n.7.

6                      *b.    Analysis*

7          In spite of the importance of reassignment in a reasonable accommodation case and the

8    formidable legal burden articulated by the Ninth Circuit and California courts, the parties agree

9    that the record is "entirely silent" on whether The Hartford could have reassigned Stoll to a vacant

10   position.  [Opp., at 5; Reply, at 3.]  The Hartford blames Stoll for this silence, repeatedly pointing

11   out that plaintiff's counsel has not conducted any discovery in the entire case.  [Memo. ISO

12   Motion, at 4 n.2; Reply, at 3 n.1.]  However, on this issue at this stage of the litigation, the

13   responsibility squarely lies with defendant to "establish[] through undisputed facts that . . . there

14   simply was no vacant position within the employer's organization for which the disabled

15   employee was qualified and which the disabled employee was capable of performing with or

16   without accommodation[.]"[14] Jensen, 85 Cal. App. 4th at 263.

17         Despite its high burden of proof, The Hartford has provided the Court with nothing

18   regarding job vacancies between the initial on-the-job injury and Stoll's termination.

19   **F.    Temporary Total Disability**

20         1.    Background

21         The Court now (re)turns to the question of whether plaintiff, though temporarily totally

22   disabled, could nonetheless have performed, with accommodations, the essential functions of any

23   other job at The Hartford.  The undisputed facts show that, "[s]ince leaving active employment

24   with The Hartford in the Summer of 2004 Ms. Stoll has been on various forms of disability and

25   workers' compensation leave[.]"  [Memo. ISO Motion, at 2.]  To obtain those benefits, Stoll and

26

27         [14] While the law does not impose any burden on Stoll to identify an existing, vacant position
     within The Hartford's organization, the failure of plaintiff's counsel to conduct any discovery on this
     issue is not without consequence.  If plaintiff's counsel had directed the Court's attention to some
28   vacant position which Stoll could have performed, the Court would not have to include the next
     section on the issue of whether a "totally disabled" employee would nonetheless be able to work.

1   her physicians represented that Stoll was temporarily totally disabled and thus unable to work.

2   The Hartford argues, "Stoll's status as *totally* disabled . . . belies any testimony that she could

3   perform

4   . . . any job at The Hartford[.]"  [Memo. ISO Motion, at 7.]  If The Hartford is correct, "the

5   employer cannot be required to find a job for an employee when no such position could be created

6   even hypothetically."  Swonke v. Sprint, Inc., 327 F. Supp. 2d 1128, 1138 (N.D. Cal. 2004).

7   Therefore, this Court must now consider whether Stoll, who was temporarily totally disabled for

8   purposes of collecting disability and workers' compensation benefits, can nonetheless pursue a

9   cause of action against The Hartford for failure to make reasonable accommodation(s) that would

10  have enabled her to work.

11      An employee is totally disabled "if [s]he is unable to earn any income during the period

12  when [s]he is recovering from the effects of the injury."  Herrera v. Workmen's Comp. Appeals

13  Bd., 71 Cal. 2d 254, 257 (Cal. 1969) (interpreting Cal. Labor Code § 4653).  A temporary

14  disability "is an impairment reasonably expected to be cured or materially improved with proper

15  medical treatment."  Signature Fruit Co. v. Workers' Comp. Appeals Bd., 142 Cal. App. 4th 790,

16  795 (Cal. Ct. App. 2006).  Temporary disability benefits are "intended as a substitute for lost

17  wages during a period of transitory incapacity to work."  Id.

18      In light of these definitions, the Court considers two legal theories which may bar Stoll's

19  suit because of her prior representations of temporary total disability: (1) judicial estoppel, and (2)

20  traditional summary judgment grounds.

21      2.      Judicial Estoppel

22          a.      *Legal Standard*

23      The "essential function and justification of judicial estoppel is to prevent the use of

24  intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for

25  suitors seeking justice."  Drain v. Batz Laboratories, Inc., 69 Cal. App. 4th 950, 956 (Cal. Ct. App.

26  1999) (quoting Billmeyer v. Plaza Bank of Commerce, 42 Cal. App. 4th 1086, 1097 (Cal. Ct. App.

27  1995)) (other internal citations omitted).  "The gravamen of this doctrine . . . precludes a party

28  from gaining an advantage by taking one position, and then seeking a second advantage by taking

1    an incompatible position." Prilliman, 53 Cal. App. 4th at 957.  Judicial estoppel is an equitable

2    doctrine which a court invokes at its discretion, and is a matter of federal law in federal court.

3    Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 601, 603 (9th Cir. 1996).  In Rissetto,

4    because the employee had claimed to be temporarily totally disabled in workers' compensation

5    proceedings and had settled those proceedings favorably, the Ninth Circuit judicially estopped the

6    employee from claiming, in a FEHA age discrimination suit, that she had performed her job

7    adequately.  Id. at 605-06.

8         Although the conclusion of Rissetto (i.e., that a recipient of California disability benefits is

9    estopped from bringing a FEHA claim) would seem, at first glance, to bind this Court and

10   vindicate The Hartford,[15] the Rissetto analysis did not survive the strict curtailment of judicial

11   estoppel in Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795 (1999)[16].  Where the plaintiff had

12   received Social Security benefits,[17] the Supreme Court held that the court of appeals erroneously

13   applied a presumption to judicially estop the employee from claiming in ADA litigation that she

14   could have performed the essential functions of her job with reasonable accommodation.  Id. at

15   802. The Supreme Court reasoned the Social Security Administration did not consider the

16   possibility of a reasonable accommodation in determining eligibility for benefits, nor did the

17

18        [15] Even without the Supreme Court's opinion in Cleveland, a district court was able to
     distinguish factually a cause of action for ADA discrimination from Rissetto's estoppel of an age
19   discrimination claim.  Norris, 948 F. Supp. at 1447.  The district court explained the ADA litigant's
     claim that she can work with reasonable accommodation is perfectly consistent with her claim for
20   disability benefits because she cannot work without reasonable accommodation. Id.  Therefore, based
     on both the different facts and the changed legal standard, Rissetto is not binding precedent on the
21   interrelationship of "temporary total disability" under California's workers' compensation law and
     the reasonable accommodation provisions of FEHA.
22

23        [16] Even before Cleveland was decided, the Ninth Circuit had backed away from judicial
     estoppel as an automatic bar to an ADA or FEHA claim whenever the plaintiff had claimed total
24   disability to receive benefits.  See Lujan v. Pac. Mar. Associates, 165 F.3d 738, 739 (9th Cir. 1999)
     (reversing a grant of summary judgment for defendants where trial court based its ruling on judicial
25   estoppel of ADA/FEHA plaintiff who received disability benefits by representing that he could not
     work).

26        [17] The Social Security Act required plaintiff to prove a disability "of such severity that [she]
27   is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial
     gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Much like the
28   definition of "total disability" in California law, this definition would appear to bar any subsequent
     litigation alleging the plaintiff could have worked during the period of disability, though, in fact, there
     is no such automatic bar.

1    Social Security application ask about reasonable accommodations.  Id. at 803.  The reasonable

2    accommodation issue "may turn on highly disputed workplace-specific matters" that the Social

3    Security Administration would be ill-equipped to assess, in light of all the benefits applications it

4    must process.  Id.

5          However, the Supreme Court did not allow ADA plaintiffs to ignore their past

6    representations of disability.  Instead, plaintiffs "must proffer a sufficient explanation" for the

7    apparent contradiction arising from the earlier claim of disability.  Id. at 807.  To overcome a

8    motion for summary judgment, "that explanation must be sufficient to warrant a reasonable juror's

9    concluding that, assuming the truth of, or the plaintiff's good-faith belief in the earlier statement,

10   the plaintiff could nonetheless perform the essential functions of her job, with or without

11   reasonable accommodation."  Id. at 807 (internal quotations omitted).

12         After Cleveland, the Ninth Circuit applies judicial estoppel in disability cases much more

13   narrowly.  Only where a plaintiff "is playing fast and loose with the courts" or takes a position

14   "tantamount to a knowing misrepresentation to or even fraud on the court" will the plaintiff be at

15   risk of estoppel.  Johnson v. Oregon, 141 F.3d 1361, 1369 (9th Cir. 1998).

16              *b.    Analysis*

17         The Court has no reason to judicially estop Stoll from pursuing her FEHA claim simply

18   because she claimed to be temporarily totally disabled on her applications for workers'

19   compensation and disability benefits.  There is no evidence that Stoll "is playing fast and loose" or

20   defrauding the Court.  Even if Rissetto remains good law, Stoll's facts are distinguishable because

21   her claim for reasonable accommodation can be reconciled with a benefits application stating that

22   she cannot work without accommodation.

23         3.    Traditional Summary Judgment Grounds

24              *a.    Legal Standard*

25         Even though judicial estoppel is largely inapplicable, "plaintiff's prior representations may

26   be so strong and definitive that they will defeat the plaintiff's prima facie case on traditional

27   summary judgment grounds."  Johnson, 141 F.3d at 1369.  Relying on EEOC Enforcement

28   Guidance documents, the Ninth Circuit has made clear, "neither application for nor receipt of

1    disability benefits automatically bars a claimant[.]"  Id. at 1367.  Therefore, the Ninth Circuit's

2    "clear preference [is] that inconsistent statements simply be considered along with other evidence

3    to see whether they [are] so damaging that no rational trier of fact could rule in the plaintiff's

4    favor."  Fredenburg v. Contra Costa County Dep't of Health Services, 172 F.3d 1176, 1179 (9th

5    Cir. 1999).

6          This rule is considered good public policy because it does not force plaintiffs to choose

7    between the short-term receipt of disability benefits to relieve financial stress and the long-term

8    vindication of statutory rights.  Johnson, 141 F.3d at 1368. If an application for disability benefits

9    precluded an employee's subsequent lawsuit against the employer, the law would protect

10   discriminatory employers and leave employees "whip-sawed between the competing demands of

11   the different statutes."  Id.; Lujan v. Pac. Mar. Associates, 165 F.3d 738, 741 n.4 (9th Cir. 1999).

12         Applying this reasoning even before Cleveland, the Ninth Circuit affirmed summary

13   judgment for the employer, where the employee's doctor testified in the deposition that the

14   employee was totally disabled on the date of termination, and where plaintiff's sworn statements

15   on state disability and Social Security forms claimed a complete disability for work-related

16   purposes.  Kennedy v. Applause, Inc., 90 F.3d 1477, 1481-82 (9th Cir. 1996).  The court

17   disregarded the employee's "uncorroborated and self-serving" deposition testimony that she was a

18   "qualified individual with a disability" under the ADA, thus contradicting the other evidence.  Id.

19         Similarly, a district court found that a series of physicians' notes representing the plaintiff

20   as totally disabled effectively exempted the employer from FEHA's informal, interactive process,

21   which was "guaranteed to be futile" until the employer had notice that physicians would release

22   plaintiff for work.  Swonke, 327 F. Supp. 2d at 1137.  In dicta, the court opined that, even if a

23   doctor testified differently in a deposition or at trial, the employer would still win because such

24   after-the-fact testimony "would not alter the facts as they were plainly presented to [the employer]

25   at the time."  Id. at 1133.  The court's analysis was also influenced by plaintiff's "gamesmanship"

26   in asking the court to disregard forms which the plaintiff had authorized his chiropractor to submit

27   to the employer, and by plaintiff's personal written statements to human resources personnel that

28   plaintiff would have to obtain physician releases before he could legally return to work.  Id. at

1134-35.

On the other hand, an employee survived summary judgment on his FEHA claim even though he had represented himself as totally and permanently disabled in his Social Security application, in a demand for arbitration with his health-care provider, and in an appeal for the denial of long-term disability benefits.  <u>Smith</u>, 207 F. Supp. 2d at 1035.  The district court relied on the absence of references to "accommodation" in, e.g., the disability benefits policy.  <u>Id.</u> at 1035.

Again, a FEHA discrimination plaintiff could go forward once the plaintiff produced declarations from his treating physicians that he could have continued working, had the employer not removed an existing accommodation.  <u>Bell v. Wells Fargo Bank, N.A.</u>, 62 Cal. App. 4th 1382, 1388-89 (Cal. Ct. App. 1998).  However, the employer's contrary evidence was much less conclusive and consisted merely of ambiguous statements on disability applications that plaintiff was disabled as to "his regular and customary work."  <u>Id.</u> at 1387-88.

> b.     Analysis

The Court has reviewed the record in this case for the "sufficient explanation" that would prevent Stoll's representations of temporary total disability from being "so damaging that no rational trier of fact could rule in [her] favor."  <u>Cleveland</u>, 526 U.S. at 807; <u>Fredenburg</u>, 172 F.3d at 1179.  The Court finds such an explanation in this deposition testimony of Dr. Caligiuri in response to certain queries by plaintiff's counsel:

> Q:    Well, let me ask you this: Do you recall Regina asking at any point in time if you would clear her to go back to work at The Hartford?
>
> A:    I believe she did ask me that. And I believe that I had told her that she could try that.
>
> I never want to hold a patient back. And my philosophy is, I will give a patient my best opinion with respect to treatment, with respect to work and disability status, but I will always let that patient decide.  There are usually economic issues associated with disability.
>
> And if my memory serves me correctly, I think she did ask and I think I did state she could go back at least on a trial basis, if she was so inclined and if the company would have her.
>
> Q:    Did you hedge your bet in terms of telling her that she should not, in any event, do keyboarding if she went back?

A:    I told her that's definitely not congenial to her condition.  And probably that's going to provoke and flare up her symptoms.  But if the employer's able to offer accommodations or alternative work, which is often the case with many different types of jobs, then that would be in her best interest and ensure the highest probability that she would be able to stay at modified work.

Q:    You would have cleared her if that accommodation had been provided?

A:    Like I said, I would never preclude a patient. I would give them my opinion and ultimately it's their decision.

       Certainly if the employer had furnished me with something saying that modified work is definitely available–and many employers will actually proactively write me letters and say "We have modified work."  "We have a modified work policy."  And then, obviously, we would try to work something out.

[Caligiuri Depo., pp. 14-15.]

      The Court believes this portion of Dr. Caligiuri's deposition testimony is sufficient to create a genuine issue of fact as to whether plaintiff could have worked with accommodation at The Hartford during the period when she collected benefits for being "temporarily totally disabled."  This testimony establishes that, if The Hartford had proactively contacted Dr. Caligiuri about work accommodations, Stoll possibly could have returned to employment at The Hartford in an existing, vacant position.

      This Court's finding is consistent with the statutory interpretation and policy explanation other courts rely on in denying summary judgment to employers in disability cases.  California's definition of "temporary total disability" makes no reference to the possibility of working with accommodation.  FEHA does make reference to such accommodations.  Furthermore, the definition of "temporary" disability anticipates Stoll's eventual recovery.  Had The Hartford tried harder to reasonably accommodate Stoll, she might have been returned to the underwriter position after her recovery. Also, Stoll has relied on disability benefits for income since her injury.  If this Court granted The Hartford's motion, the Court essentially would have forced Stoll to choose between her financial solvency and the exercise of her FEHA rights.

//

//

//

05cv1907

1

**CONCLUSION**

2          For the foregoing reasons, the Court **DENIES** The Hartford's motion for summary

3 judgment.

4          **IT IS SO ORDERED**.

5

**DATED:  November 7, 2006**

6

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

05cv1907